IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL A. ROSSUM | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-04-0464 |
| | § | |
| MICHAEL CHERTOFF, SECRETARY OF | § | |
| THE DEPARTMENT OF HOMELAND | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] is Defendant's Motion for Summary Judgment (Docket Entry No. 17). The court has reviewed the motion, the parties' filings, and the relevant law. For the reasons to be discussed below, the court **GRANTS** Defendant's motion.

## I. Case Background

This is an employment discrimination suit in which Plaintiff Michael A. Rossum ("Plaintiff") advances claims of color, national origin, gender, disability and race discrimination against Defendant Secretary of the Department of Homeland Security ("DOHS") ("Defendant").[2] Plaintiff brings his color, national origin, gender and race discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and

---

[1]     On October 29, 2004, the parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). Docket Entry No. 15.

[2]     On February 15, 2005, Michael Chertoff was sworn in as the second Secretary of the Department of Homeland Security, replacing Thomas J. Ridge.

his disability discrimination claim under the Rehabilitation Act, 29 U.S.C. § 791 et seq.[3]

Plaintiff, an African-American male with a twenty percent service-connected disability, has been an employee of the U.S. Customs Service,[4] a division of the Department of Homeland Security, since 1997.[5] In 2001, the U.S. Customs Service announced two vacancies for criminal investigator positions.[6] The Assistant District Director of Investigations, Michael D. McMahon ("McMahon"), was the recommending official for the positions and the Acting Director for the Houston District Office, Hipolita Acosta ("Acosta"), was the selecting official for the positions.[7]

U.S. Customs Service issued several lists of qualified candidates for these positions.[8]  These included the Telephone Application Processing System ("TAPS") referral list, the Outstanding Scholars referral list, the Veterans Readjustment referral list and the Bilingual/Bicultural referral list.[9]  The

---

[3]    Plaintiff's Complaint, Docket Entry No. 1.

[4]    Defendant notes in its motion that the U.S Customs Service is now known as U.S. Customs and Border Protection.

[5]    Plaintiff's Complaint, Docket Entry No. 1.  See United States' Motion to Dismiss, And Alternatively, Motion for Summary Judgment ("Motion for Summary Judgment"), Docket Entry No. 17, p. 2.

[6]    Motion for Summary Judgment, Docket Entry No. 17, p. 1.

[7]    Id. at p. 2.

[8]    Id.

[9]    Id.

2

Bilingual/Bicultural list consisted of individuals who did not receive the highest examination scores, but possessed other skills that made them qualified for the vacant positions.[10]  On or about August 8, 2002, Plaintiff filed an application for a criminal investigator position to fill Vacancy Announcement CH-02-INS-1142759 in the Houston District.[11]  Plaintiff applied for the position through the TAPS and received a score of ninety-five percent.[12]  Plaintiff was subsequently placed on the TAPS list as a result of his high TAPS examination score.[13]

Plaintiff was not selected for the criminal investigator position.  Instead, the vacancies were filled by two individuals within the department who were proficient in Spanish and were otherwise qualified for the positions.[14]  These candidates were both selected from the Bilingual/Bicultural list.[15]

On October 23, 2002, Plaintiff filed a charge of discrimination, in which he alleged that he had been discriminated

---

[10]     Plaintiff's Response to Defendant's Motion to Dismiss and Motion for Summary Judgment ("Response to Motion for Summary Judgment"), Docket Entry No. 18, p.2.

[11]     Id.

[12]     Id.  Due to Plaintiff's veteran status, ten percent was added to the TAPS examination score, giving Plaintiff a total score of one hundred and five percent.

[13]     Id.

[14]     Motion for Summary Judgment, Docket Entry No. 17, Ex. 1, Sworn Affidavit of Michael D. McMahon ("McMahon Affidavit").

[15]     Response to Motion for Summary Judgment, Docket Entry No. 18, p.2.

against on the basis of his race and physical disability.[16]  He advanced three specific arguments in his complaint:  (1) DOHS declined to hire him for a criminal investigation position despite the fact that he scored a one hundred and five percent on the TAPS examination; (2) to his knowledge, no blacks were selected for the position; and (3) to his knowledge, individuals with lower qualifications than Plaintiff were selected for the position.[17]  The EEOC issued its final decision on September 23, 2003, in which it determined Plaintiff had no actionable claims.[18]

Plaintiff filed suit on February 5, 2004, alleging that Defendant discriminated against him on the basis of his race, color, national origin, gender and physical disability.[19]  On June 24, 2005, Defendant filed its motion to dismiss, and alternatively, motion for summary judgment.[20]  In its motion, Defendant moved to dismiss Plaintiff's color, national origin and gender discrimination claims under Federal Rule of Civil Procedure 12(b)(1).  Plaintiff further moved to dismiss Plaintiff's racial discrimination claim under Federal Rule of Civil Procedure

---

[16]    Motion for Summary Judgment, Docket Entry No. 17, Ex. 3, EEO Complaint.

[17]    Id.

[18]    Motion for Summary Judgment, Docket Entry No. 17, Ex. 4, EEOC Decision.

[19]    Docket Entry No. 1.

[20]    Docket Entry No. 17.

4

12(b)(6).   Finally, Plaintiff moved for summary judgment on Plaintiff's racial discrimination and disability claims.

## II.  <u>Motion to Dismiss</u>

Defendant has moved to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  A Rule 12(b)(1) motion allows a party to challenge the subject matter jurisdiction of the district court to entertain the complaint, Fed. R. Civ. P. 12(b)(1), while a motion under 12(b)(6) seeks dismissal of the complaint because it fails to state a legally cognizable claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal under either rule is appropriate only when it appears beyond a doubt that the plaintiff will be unable to prove any set of facts in support of its claim for relief.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Lovick v. Ritemoney Ltd.</u>, 378 F.3d 433, 437 (5th Cir. 2004) (citations omitted).

When considering a Rule 12(b)(6) motion to dismiss, the court construes the allegations in the complaint liberally in favor of the pleader and accepts as true all well-pleaded facts.  <u>Hermann Holdings Ltd. v. Lucent Tech. Inc.</u>, 302 F.3d 552, 558 (5th Cir. 2002).  However, the court may not rely on conclusory allegations or legal conclusions disguised as factual allegations.  <u>Jeanmarie v. United States</u>, 242 F.3d 600, 602 (5th Cir. 2001).

In his pending motion to dismiss, Defendant advances two reasons why the court should dismiss Plaintiff's claims: (1) with

respect to the national origin, gender, and color discrimination claims, Defendant contends that Plaintiff failed to exhaust his administrative remedies; and (2) with respect to the racial discrimination claim, Defendant argues that Plaintiff failed to prove that he suffered damages in the form of an adverse employment action.[21]  The court will address each argument in turn.

**A.   Title VII and the Exhaustion of Administrative Remedies**

Defendant moves to dismiss for lack of subject matter jurisdiction Plaintiff's claims for color, national origin, and gender discrimination under Federal Rule of Civil Procedure 12(b)(1).  Defendant argues that this court does not have jurisdiction to consider these claims because Plaintiff has failed to exhaust his administrative remedies.  The court agrees.

A federal employee's exclusive redress for unlawful discrimination experienced in the workplace is provided in section 717 of Title VII, 42 U.S.C. § 2000e-16(a)-(e).  Brown v. Gen. Servs Admin., 425 U.S. 820, 829 (1976); Pacheco v. Rice, 966 F.2d 904, 905 (5th Cir. 1992); Henderson v. United States Veterans Admin., 790 F.2d 436, 439 (5th Cir. 1986).  Section 2000e-16(c) gives a federal employee the right to file suit in federal court, but mandates that to do so, the employee must first pursue and exhaust administrative remedies against his federal employer.  Randel v. United Stated Dep't of Navy, 157 F.3d 392, 395 (5th Cir. 1998); Fitzgerald v.

---

[21]    Docket Entry No. 17.

6

Secretary, U.S. Dep't of Veterans Affairs, 121 F.3d 203, 206 (5th Cir. 1997); Barnes v. Levitt, 118 F.3d 404, 408 (5th Cir. 1997). Only when a federal employee exhausts his administrative remedies does a district court have jurisdiction to entertain his subsequent Title VII action. Randel, 157 F.3d at 395; Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995); Francis v. Brown, 58 F.3d 191, 192 (5th Cir. 1995); Tolbert v. United States, 916 F.2d 245, 247 (5th Cir. 1990); Hampton v. IRS, 913 F.2d 180, 182 (5th Cir. 1990); Prewitt v. United States Postal Serv., 662 F.2d 292, 303 (5th Cir. 1981).

To exhaust his remedies at the administrative level, a federal employee must satisfy the "rigorous administrative exhaustion requirements and time limitations" set out in section 717. Brown, 425 U.S. at 829. First, the employee is required to contact the federal agency's EEO Counselor within forty-five days of the alleged discriminatory action and request informal counseling. 29 C.F.R. § 1614.105(a)(1);[22] see also Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).[23] The EEO counselor must conduct a final interview with the employee no later than thirty days after the date the aggrieved employee contacted the agency's EEO office. 29

---

[22]    The EEOC, the agency that administers and enforces Title VII, has promulgated various regulations governing the processing of a complaint, pursuant to the authority granted it in 42 U.S.C. § 2000e-16(b).

[23]    In the case of an alleged discriminatory personnel action, the employee has forty-five days from the effective date of this action to consult an EEO counselor. 29 C.F.R. § 1614.105(a)(1).

C.F.R. § 1614.105(d).  If no informal resolution within the agency is forthcoming, the EEO counselor issues a written notification to the employee informing him of the right to file a formal complaint of discrimination with the agency.  Id. § 1614.105(d).

Within fifteen calender days of receiving this notification, the employee must file a complaint of employment discrimination with the agency's EEO office.  Id. § 1614.106(b); see also Barnes v. Levitt, 118 F.3d 404, 408 (5th Cir. 1997); Hoffman v. Boeing, 596 F.2d 683, 685 (5th Cir. 1979).  If the employee fails to file the complaint within the fifteen-day limit, the agency is required to dismiss the entire complaint.  29 C.F.R. § 1614.107(a)(2).  If the agency does not reach the merits of the complaint because the federal employee fails to follow one or more steps of the administrative process, the district court may not reach the merits of the claim.  Barnes, 118 F.3d at 408; Johnson v. Bergland, 614 F.2d 415, 418 (5th Cir. 1980).  Stated another way, if the employee fails to exhaust administrative remedies because of non-adherence to administrative procedures, the district court does not have jurisdiction to consider his claims.  Fitzgerald, 121 F.3d at 206; Tolbert, 916 F.2d at 248.

Filing a charge with the EEOC is a condition precedent to the filing of a Title VII action and the failure to exhaust this administrative remedy likewise deprives a district court of jurisdiction over an employment discrimination case.  See Tolbert,

8

916 F.2d at 247-48 (noting that this is "a prerequisite to federal subject matter jurisdiction"); Porter v. Adams, 639 F.2d 273, 276 (5th Cir. 1981) (stating that the "exhaustion requirement ... is an absolute prerequisite" to filing an employment discrimination suit).  It is a well-established principle that the allegations in a judicial complaint filed pursuant to Title VII are limited by charges of discrimination "like or related to" the allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission.  Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970).

In his EEOC complaint, Plaintiff alleged that Defendant discriminated against him on the basis of his race and physical disability.  The decision rendered by the EEOC likewise only dealt with the issues of racial and disability discrimination. Accordingly, the court finds that it lacks subject matter jurisdiction over Plaintiff's gender, color, and national origin discrimination claims because Plaintiff failed to raise these claims prior to the institution of this action.  See Clayton v. Rumsfeld, 106 Fed. Appx. 268, 271 (5th Cir. 2004) (finding that former employee failed to raise the issue of her constructive discharge in the administrative process, and thus, was precluded from pursuing that claim in her Title VII suit).

Based on the foregoing, Plaintiff's claims for gender, color, and national origin discrimination are **DISMISSED**.

**B.    Dismissal for Failure to Prove Adverse Employment Action**

Defendant moves to dismiss Plaintiff's race discrimination claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that Plaintiff fails to state a claim with respect to this cause of action because Plaintiff is unable to prove damages resulting from an adverse employment action.  The court disagrees.

To establish a prima facie case of race discrimination, the plaintiff must show that he: 1) is a member of a protected class; 2) was qualified for his position; 3) suffered an adverse employment action; and 4) was replaced by someone who is not a member of the protected class to which plaintiff belongs or was treated less favorably than similarly situated employees of a different race.  See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513-13 (5th Cir. 2001).

As it relates to the prima facie case, it is undisputed that Plaintiff is a member of a protected class, that he was qualified for the criminal investigator position and that individuals who were outside of his protected class were hired into the contested positions.[24]  It is disputed whether Plaintiff suffered an adverse employment action.[25]

---

[24]     Motion for Summary Judgment, Docket Entry No. 17, p.8.

[25]     Id.

10

The term "adverse employment action" is construed narrowly so that only "ultimate employment decisions" such as hiring, discharging, promoting, and compensating are actionable. Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004); Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 531-32 (5th Cir. 2003); Dollis v. Rubin, 77 F.3d at 782.  An employer's decision that does not affect the employee's job duties, compensation, or benefits is not an "adverse employment action" under Title VII and, therefore, cannot form the basis of a cognizable claim.  Pegram, 361 F.3d at 282 (citations omitted).  Similarly, the denial of a purely lateral transfer has been held not to be an adverse employment action redressable by Title VII.  See Burger v. Central Apartment Mgmt., Inc., 168 F.3d 875, 879 (5th Cir. 1999).

In his complaint, Plaintiff states that, if he had been selected for the position of criminal investigator, he would have had a "potential for higher pay" or would have "received a substantial pay increase as well as promotion and other employment benefits."[26]  The record reflects that the criminal investigator position had significantly different job duties than those performed by Plaintiff as a detention enforcement officer.[27]  Specifically, according to McMahon, a "criminal investigator must

---

[26]    Complaint, Docket Entry No. 1, ¶ 22.

[27]    The complaint states that Plaintiff was a detention enforcement officer with the U.S. Department of Justice, Immigration and Naturalization Service, Houston District Office, at the time of the alleged act of discrimination.  See Complaint, Docket Entry No. 1, ¶ 9.

plan and conduct investigations, often undercover, concerning possible violations of criminal and administrative provisions of the Immigration and Nationality Act."[28]   In addition, a criminal investigator must, among other things, carry firearms, make arrests, and prepare investigative reports.[29]   The duties of a criminal investigator are far broader in scope and more personally dangerous than those of a detention officer.  Thus, the court finds that Plaintiff has suffered an adverse employment action and has further established a prima facie case of racial discrimination. The court **DENIES** Defendant's motion to dismiss as it relates to this issue.

### III.   <u>Summary Judgment Standard</u>

Summary judgment is warranted only when the evidence presented to the court fails to raise any genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>TIG Ins. Co. v. Sedgwick James of Washington</u>, 276 F.3d 754, 759 (5th Cir. 2002). A fact is "material" if the relevant substantive law identifies it

---

[28]     Motion for Summary Judgment, Docket Entry No. 17, Ex. 1, McMahon Affidavit.

[29]     <u>Id.</u>

as one that may reasonably affect the outcome of the case.  <u>Liberty Lobby</u>, 477 U.S. at 248; <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).

The movant must inform the court of the basis for a grant of summary judgment by identifying relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, and affidavits on file, that demonstrate the absence of genuine issues of material fact.  Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the movant satisfies its burden, the adverse party must go beyond the pleadings and produce competent evidence that demonstrates genuine issues of material fact do exist which must be resolved by a trier of fact.  Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324.  However, to withstand summary judgment, the adverse party must show more than "some metaphysical doubt as to the material facts."  <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995).  Likewise, conclusory statements, unsubstantiated assertions, and speculation are not sufficient to raise material fact issues for trial.  <u>TIG Ins. Co.</u>, 276 F.3d at 759.  When deciding whether the evidence creates a fact issue, the court resolves all doubts and draws all justifiable inferences in favor of the party opposing the motion.  <u>Liberty Lobby</u>, 477 U.S. at 255; <u>Fierros v. Tex. Dep't of Health</u>, 274 F.3d 187, 190 (5th Cir. 2001).

**A.   Plaintiff's Claim for Race Discrimination Under Title VII**

13

As discussed above, Title VII prohibits employment discrimination on the basis of race, color, religion, gender, and national origin. Fitzgerald v. Secretary, United States Dep't of Veterans Affairs, 121 F.3d 203, 206 (5th Cir. 1997).

In Section IIB, the court found that Plaintiff alleged a prima facie case of race discrimination, triggering a presumption of discrimination. Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002). The burden then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981).

To satisfy his burden of production, Defendant submits the affidavits of McMahon and Acosta as well as the decision rendered by the EEOC administrative judge. The court notes that, although the administrative judge's decision is not competent summary judgment evidence, the affidavits submitted by Defendant articulate two legitimate, non-discriminatory reasons for Defendant's decision not to hire Plaintiff, namely that Plaintiff "did not speak fluent Spanish" and "did not do well on his interview."[30]   In essence, Defendant argues that the candidates selected to fill the positions were simply better qualified than Plaintiff.[31]

First, Defendant maintains that the candidates hired to fill

---

[30]   Motion for Summary Judgment, Docket Entry No. 17, p.10.

[31]   Id.

14

the criminal investigator vacancies had to be proficient in Spanish because of the large number of criminal investigations involving Spanish-speaking individuals.[32] McMahon stated that this factor was critical in the selection process because one of the criminal investigator's primary functions is to "plan and conduct investigations, often undercover, concerning possible violations of criminal and administrative provisions of the Immigration and Nationality Act."[33] McMahon further noted that "Houston accepts many Spanish-speaking individuals" and that it is important that criminal investigators be able to speak proficient Spanish when dealing with these individuals.[34]

Second, Defendant proffers evidence that Plaintiff did not perform well during his interview. McMahon testifies that Plaintiff was "not the strongest candidate," that he spent the majority of his interview talking about football, that he could not answer questions pertaining to the duties and responsibilities of a criminal investigator, and that he was not able to answers questions pertaining to the duties of a special agent.[35] Acosta also testifies that Plaintiff was not recommended by McMahon or by

---

[32]    Motion for Summary Judgment, Docket Entry No. 17, Ex. 1, McMahon Affidavit.

[33]    Id.

[34]    Id.

[35]    Id.

15

his supervisors for the criminal investigator position.[36]

The court finds that this evidence is more than sufficient for Defendant to satisfy his burden of articulating a legitimate, non-discriminatory rationale for his action.

Once Defendant meets his burden of production, the presumption of discrimination dissolves and Plaintiff must produce evidence suggesting "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)." Rachid v. Jack In The Box, 376 F.3d 305, 312 (5th Cir. 2004) (citations, internal quotation marks, and internal alterations omitted).   Plaintiff simply fails to present a fact issue as to either of these alternatives.

First, Plaintiff fails to present any evidence indicating that he is proficient in Spanish.  Instead, he argues in his affidavit, "the explanation that the agency needed only those who speak Spanish was pretextual since I informed them that I could pass the Spanish test at the academy, and they indeed sent the selectees to the same academy for Spanish training."[37]   This self-serving statement is

---

[36]     Motion for Summary Judgment, Docket Entry No. 17, Ex. 2, Acosta Affidavit.

[37]     Response to Motion for Summary Judgment, Docket Entry No. 18, Ex. 1, Rossum Affidavit.

16

both speculative and incompetent.   Plaintiff fails to aver the source of his personal knowledge that the persons chosen had to pass a Spanish test at the academy or the basis upon which he concludes that he could pass such a test.   All he really states is his belief that at some time in the future, he could pass a Spanish test.   This is not the same thing as being fluent in Spanish, as anyone who has struggled with speaking a foreign language can attest.

Second, with respect to Defendant's contention that Plaintiff did poorly on his interview, Plaintiff likewise fails to raise a fact issue precluding summary judgment in favor of Defendant. Instead, Plaintiff states in his affidavit that he received a TAPS examination score of one hundred and five percent – a fact that Defendant does not dispute.

Plaintiff further states that he "was informed by fellow workers that Mr. McMahon was going about the agency telling people he was looking for qualified Black Americans for those openings."[38] This statement not only constitutes inadmissible hearsay, but also fails to raise a fact issue with respect to Defendant's contention that Plaintiff did poorly in his interview and was less qualified for the criminal investigator position than other candidates.

In sum, Plaintiff has failed to present even a scintilla of evidence that Defendant intended to discriminate against African Americans in general, or discriminated against him in particular

---

[38]     Id.

17

because of his race.   It is well-established, however, that a
plaintiff's subjective belief of discrimination, without more, is
not enough to demonstrate pretext.   E.E.O.C. v. La. Office of Cmty.
Servs., 47 F.3d 1438, 1448 (5th Cir. 1995).   Because Plaintiff has
failed to raise a fact question for the jury on this issue, summary
judgment is appropriate.

Defendant's motion for summary judgment on Plaintiff's race
discrimination claim is **GRANTED**.

### C.   Plaintiff's Claim for Disability Discrimination Under the Rehabilitation Act

Plaintiff brings his disability discrimination claim pursuant
to the Rehabilitation Act.   The Rehabilitation Act's anti-
discrimination provision indicates that "[t]he standards used to
determine whether this section has been violated ... shall be the
standards applied under title I of the American with Disabilities
Act of 1990 and the provisions of sections 501 through 504, and 510
of the American with Disabilities Act of 1990, as such sections
related to employment." 29 U.S.C. § 794.   The Rehabilitation Act
incorporates the standards used in ADA cases, which are subject to
the Title VII burden-shifting analysis.   Daigle v. Liberty Life Ins.
Co., 70 F.3d 394, 396 (5th Cir. 1995); see also Daugherty v. City
of El Paso, 56 F.3d 695, 697-98 (5th Cir. 1995), cert. denied, 516
U.S. 1172 (1996).

The Rehabilitation Act prohibits discrimination against
federal employees with disabilities.   See 29 U.S.C. § 794(a).   In

18

order to qualify for relief under the Rehabilitation Act, a plaintiff must prove that: 1) he was an "individual with a disability;" 2) he was "otherwise qualified;" 3) he worked for a covered program or activity; and 4) he was adversely treated solely because of his disability. See id.; Hileman v. City of Dallas, Tex., 115 F.3d 352, 353 (5th Cir. 1997). An individual with a disability is someone who: 1) has a physical or mental impairment which "substantially limits one or more of such person's major life activities; 2) has a "record" of such an impairment; or 3) is "regarded" as having such an impairment. Hileman, 115 F.3d at 353.

"Major life activities" are those activities that are "of central importance to daily life." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002)(interpreting the identical term in the context of the Americans with Disabilities Act). They include such functions as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii)(implementing the Rehabilitation Act under the Department of Health and Human Services for programs and activities receiving federal financial assistance); see also de la Torres v. Bolger, 781 F.2d 1134, 1136 (5th Cir. 1986)(applying identical definition from the EEO Commission regulations to the analysis of a Rehabilitation Act claim). Other activities could include lifting, reaching, sitting, or standing. 29 C.F.R. § 1630, App. (1998). A disability is not considered to

"substantially limit one or more . . . major life activities" unless it affects the plaintiff's ability to engage in employment generally. <u>Hileman</u>, 115 F.3d at 353-54.

With this definition of disability in mind, the court can consider the particular facts of the instant case. Defendant argues that Plaintiff has failed to establish that he was not hired as a result of his physical disability. The court agrees.

Plaintiff cannot make out a prima facie case for disability discrimination because Plaintiff's disability does not substantially limit a major life activity. More particularly, Plaintiff has a twenty percent service-connected disability in his feet due to frost bite.[39] Plaintiff claims that this disability did not affect his ability to perform his official duties.[40] Plaintiff does not allege that his disability was so limiting as to make him *completely* unable to perform the life activities of walking or standing. <u>See</u> 29 C.F.R. § 1630.2(j)(1)(i) (1998). Plaintiff also fails to claim that he was "[s]ignificantly restricted as to the condition, manner, or duration under which" he could walk or stand as compared to the average person. <u>See</u> 29 C.F.R. § 1630.2(j)(1)(ii) (1998).

When analyzing a disability claim, the critical showing required of Plaintiff is that the extent of his limitation, in terms of his own experience, was substantial. <u>Id.</u> at 2169; <u>Still v.</u>

---

[39]   Response to Motion for Summary Judgment, Docket Entry No. 18, p. 6.

[40]   <u>Id.</u>

Freeport-McMoran, Inc., 120 F.3d 50, 52 (5th Cir. 1998); see also 29 C.F.R. pt. 1630, App. § 1630.2 (j) (1998) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). Plaintiff here does not offer any evidence that his ability to either walk or stand were significantly restricted on a daily basis. In fact, Plaintiff admits that his disability only affected him when he stood for a prolonged period of time in cold weather. Plaintiff has failed to allege that this limitation would impact his performing criminal investigator duties in Houston, Texas, a locale not known for its cold weather.[41]

The court finds that Plaintiff has offered no evidence upon which a jury could base a conclusion that his service-connected disability significantly restricted a major life activity at the time of his job application as contemplated by the Rehabilitation Act. Accordingly, the court finds that Plaintiff failed to state a prima facie case for discrimination on the basis of a physical disability and **GRANTS** Defendant's motion for summary judgment with respect to this claim.

## IV.  Conclusion

Plaintiff has failed to raise a genuine issue of material fact on any of the claims he presents in this action, and Defendant is

---

[41]      Complaint, Docket Entry No. 1, ¶ 10.

entitled to judgment as a matter of law.   Thus, the court **GRANTS**

Defendant's Motion for Summary Judgment.

SIGNED at Houston, Texas, this 21st day of December, 2005.


Nancy K. Johnson
United States Magistrate Judge